STATE of Wisconsin, Plaintiff-Respondent,

v.

Frank James BURT, Jr., Defendant-Appellant.†

Court of Appeals

*No. 99–1209–CR. Submitted on briefs February 11, 2000.—Decided May 25, 2000.*

## 2000 WI App 126

(Also reported in 614 N.W.2d 42.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael P. Jakus* of Elm Grove.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jennifer E. Nashold*, assistant attorney general.

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DYKMAN, P.J. Frank James Burt, Jr. appeals from a judgment convicting him of first-degree reckless homicide, attempted armed robbery by the use of force and armed robbery by threat of force, all party-to-a-crime, and from the order denying his motion for postconviction relief. Burt argues that the trial court violated the double jeopardy clauses of the state and federal constitutions when it amended his sentence on the day of sentencing after determining that it had mistakenly used the word "concurrent" instead of "con-

secutive" in its original sentence pronouncement. We disagree and affirm.

## I. Background

¶ 2. Burt pleaded guilty to and was convicted of: (1) one count of party-to-a-crime first-degree reckless homicide, contrary to WIS. STAT. §§ 940.02(1) and 939.05 (1995–96); (2) one count of party-to-a-crime attempted armed robbery by the use of force, contrary to WIS. STAT. §§ 943.32(1)(a), 943.32(2), 939.05 and 939.32 (1995–96); (3) and one count of party-to-a-crime armed robbery by threat of force, contrary to §§ 943.32(1)(b), 943.32(2) and 939.05 (1995–96). In exchange for Burt's guilty plea, another count of attempted armed robbery was dismissed, but read in for sentencing. Burt's convictions were based on three robberies or attempted robberies of taxi cab drivers committed by Burt and Anthony Sandifer in September 1996. One of the robbery attempts resulted in one of the drivers being shot to death.

¶ 3. Burt was initially sentenced in the morning of March 6, 1997. Judge Stanley A. Miller sentenced Burt as follows:

> As to count one [first-degree reckless homicide], Mr. Burt, you're sentenced to the Wisconsin state prison system for a period of forty years.
> As to count three, you're sentenced to the Wisconsin state prison system for—Let me correct that.
> As to count four [attempted armed robbery], you're sentenced to the Wisconsin state prison system for a *concurrent* term of twenty years.
> As to count three [armed robbery], you're sentenced to a term of consecutive probation consecutive to both counts one and four for a term of

seven years and a sentence of forty years is imposed and stayed.

(Emphasis added.)

¶ 4. Judge Miller sentenced Sandifer after sentencing Burt. When Sandifer's attorney objected that Sandifer's sentence was longer than Burt's, Judge Miller realized that he had erred when he pronounced Burt's sentence. Judge Miller called Burt back to the courtroom for another hearing that afternoon. Judge Miller explained:

> I'm going to place my original notes in a sealed envelope in the file for appellate purposes, but my notes are clear, and I did misspeak, and the court is fully aware—very little time having passed in this matter—as to what its original intent was, and quite honestly, based on what the court thought it imposed–this sentence was somewhat less than the sentence that this defendant was to receive, the court believing that this defendant was a more aggressive actor in the matter, quite candidly.
>
> So I understand whenever there is a change of this kind, it's bound to raise eyebrows and raise concerns, but the court intends to impose the sentence that it had in mind and meant to say at the time of the sentencing . . . .

Judge Miller then repeated the sentence he imposed on Burt in the morning hearing except that he changed the twenty-year sentence for attempted armed robbery to be consecutive to the forty-year homicide sentence. The record contains only one judgment of conviction, reflecting the corrected sentence Judge Miller imposed in the afternoon hearing.

¶ 5. Burt filed a postconviction motion asking the trial court to modify his sentence to correspond with the sentence Judge Miller originally imposed at the

hearing on the morning of March 6, 1997. Judge Timothy G. Dugan, who was assigned the case when Judge Miller rotated out of the felony division, denied the motion. Burt appeals.

## II. Analysis

¶ 6. Burt argues that the corrected sentence Judge Miller imposed violates the double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution.[1] He points out that, in *State v. North*, 91 Wis. 2d 507, 509–10, 283 N.W.2d 457 (Ct. App. 1979), we held that "[m]odification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served." He explains that WIS. STAT. § 973.15(1) (1997–98)[2] provides, in part, "[e]xcept as otherwise provided in this section, all sentences commence at noon on the day of sentence . . . ." Since Judge Miller did not correct his sentence until the afternoon, Burt contends that he had already begun serving the original sentence under § 973.15(1). He asserts that Judge Miller ran afoul of the double jeopardy clauses because, by changing the attempted armed robbery sentence to be consecutive to the homicide sentence, he increased

---

[1] UNITED STATES CONST. amend. V provides, in part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The Fifth Amendment's double jeopardy prohibition applies to the states through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). WISCONSIN CONST. art. I, § 8(1) provides, in part, "no person for the same offense may be put twice in jeopardy of punishment . . . ."

[2] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

Burt's punishment after he had already begun serving it.

¶ 7. The double jeopardy provisions of the United States and Wisconsin constitutions are coextensive and we will treat them as one in our analysis. *See State v. Pierce*, 117 Wis. 2d 83, 86, 342 N.W.2d 776 (Ct. App. 1983). Whether Burt's double jeopardy protections have been violated is a question of law that we review de novo. *See Craig S.G. v. State*, 209 Wis. 2d 65, 68, 561 N.W.2d 807 (Ct. App. 1997).

¶ 8. In *North*, the trial court apparently confused a misdemeanor charge with a felony charge when it sentenced North to two-and-one-half years on the misdemeanor and six months on the felony. *North*, 91 Wis. 2d at 509. Over three months later, the court realized its error, and reduced the misdemeanor sentence to the statutory maximum of six months and increased the felony sentence to two-and-one-half years. *See id.* Citing *United States v. Benz*, 282 U.S. 304 (1931), we stated that "[m]odification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served." *North*, 91 Wis. 2d at 509–10. We held that the decrease of the misdemeanor sentence was proper, but that the increase of the felony sentence violated the guarantee against double jeopardy. *See id.* at 511.

¶ 9. However, after we decided *North*, the Supreme Court, in *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980), held that, unlike in the case of an acquittal, "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." In *DiFrancesco*, the Court reviewed a federal statutory scheme authorizing the imposition of an increased sentence for a convicted

"dangerous special offender" and allowing the government to seek review of the sentence in the court of appeals. *Id.* at 118–20. The Court held that the increase of a "dangerous special offender" sentence on appeal by the government did not violate the Double Jeopardy Clause. *Id.* at 138–39.

¶ 10. The Court noted in *DiFrancesco* that one of the underlying concepts of double jeopardy protection was that the state should not be allowed repeated attempts to convict an individual, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* at 127–28 (quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957)). It explained that these considerations were not significant to a defendant who had already been convicted and was facing only the government's statutorily authorized appeal of his or her sentence. *See id.* at 136. Finally, the Court concluded that language in *Benz* suggesting that a trial court may not increase a sentence once a defendant has begun serving it was dictum. *See id.* at 138–39.

¶ 11. Based on the facts of Burt's case, we conclude that the trial court's imposition of the corrected sentence did not violate the double jeopardy clauses. We acknowledge that "[d]ouble jeopardy protections apply to some resentencings . . . ." *Pierce*, 117 Wis. 2d at 87. However, the protections against double jeopardy were not violated when the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record. Judge Miller's correction of his use of the term "concurrent" does not raise any of the basic concerns behind

the double jeopardy protections as described in *DiFrancesco*. Burt had already been convicted and was not faced with the "embarrassment, expense and ordeal" or continued state of anxiety and insecurity caused by repeated attempts to convict him. The double jeopardy clauses did not attach a degree of finality to Burt's original sentence that prevented the trial court from correcting its error later in the same day.

¶ 12. In *DiFrancesco*, 449 U.S. at 137, the Court stated that the "Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his [or her] punishment will turn out to be." The Court acknowledged that "it might be argued that the defendant perceives the length of his [or her] sentence as finally determined when he [or she] begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence . . . ." *Id.* at 139. However, the Court concluded that such an argument was not significant when a federal statute provides that the sentence is subject to appeal. *See id.* Similarly, we conclude that a defendant's interest in the finality of his or her sentence is not a significant concern when the trial court simply corrects an error in speech in its pronouncement of the sentence later in the same day. Unlike in *North*, where the trial court did not attempt to correct its sentencing error until over three months later, Burt did not have a legitimate expectation that Judge Miller could not correct his slip of the tongue on the day of sentencing.

¶ 13. We agree that WIS. STAT. § 973.15(1) unambiguously states that "all sentences commence at noon

on the day of sentence . . . ."[3] However, we do not agree that the statute is relevant to our double jeopardy analysis. If we were to use § 973.15(1) in the manner Burt suggests, it would produce absurd results. Accepting Burt's argument, any defendant sentenced in an afternoon hearing would have already begun to serve his or her sentence retroactively at noon, and a trial court would be barred from changing its mistaken use of the word "concurrent" at that hearing even if it immediately realized that it meant to say "consecutive." On the other hand, a defendant sentenced in a morning hearing would have no such instant double jeopardy protection, as the trial court would have until noon to correct any mistakes. We decline to adopt the use of § 973.15(1) in a context that would produce such arbitrary results.

¶ 14. Burt also contends that the trial court was barred from amending his sentence "so as to conform the sentence to its unspoken intent," under *Scott v. State*, 64 Wis. 2d 54, 59–60, 218 N.W.2d 350 (1974). *Scott* was not a double jeopardy case. *Id.* at 58. The trial court sentenced Scott to five years in prison, but on its drive home on the night of the sentencing, the court decided that the five years did not satisfy its sentencing objectives. *See id.* at 57. The next day, the court held another hearing at which it sentenced Scott to seven-and-one-half years and explained that its sentencing notes indicated that had been its intent in the first place. *See id.* at 57–58. The supreme court reversed the amended sentence and reinstated the five-year sentence. *See id.* at 60. The supreme court held that, in the absence of a "new factor," a trial court could not

---

[3] The rule in Wisconsin that sentences of imprisonment begin at noon on the day of sentence has existed since at least 1878. *See* WISCONSIN REVISED STATUTES ch. 193, § 4733 (1878).

increase a sentence based on mere "reflection." *Id.* at 59–60.

██

¶ 15. We do not agree that the supreme court's ruling in *Scott* applies to this case. Judge Miller did not increase Burt's sentence after "reflection." Instead, as Judge Miller explained in the afternoon hearing, he misspoke at the original sentencing, and took steps to correct his error as soon as he realized it. There is nothing in the record indicating that Judge Miller, after some reflection, came to the conclusion that the original sentence would have to be increased in order to meet his sentencing goals, as did the trial judge in *Scott*.[4]

*By the Court.*—Judgment and order affirmed.

---

[4] We also note that *State v. Perry*, 136 Wis. 2d 92, 401 N.W.2d 748 (1987), is distinguishable from Burt's case. In *Perry*, the trial court stated in its oral pronouncement that Perry's sentences were concurrent. *Id.* at 112. However, the judgment of conviction listed two of Perry's sentences as consecutive to the third. *See id.* The supreme court held that the unambiguous oral pronouncement controlled, and that the sentences were all concurrent. *See id.* at 113–14. The court also stated that it would be inappropriate to amend those sentences based on the trial court's recollection, ten months after the sentencing and in the face of evidence to the contrary in the sentencing transcript, that it had actually pronounced the sentences as being consecutive. *See id.* at 115. In contrast, in Burt's case, the trial court immediately took steps to correct its error of speech, as reflected in both the sentencing transcripts and the judgment of conviction.