STATE of Wisconsin, Plaintiff-Respondent,

v.

Ary L. JONES, Sr., Defendant-Appellant.

Court of Appeals

*No. 01–2969–CR. Submitted on briefs May 9, 2002.—Decided July 3, 2002.*

2002 WI App 208

(Also reported in 650 N.W.2d 844.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Arthur B. Nathan* of Racine.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David J. Becker,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. Ary L. Jones, Sr., claimed to have been a prisoner of war in Vietnam, a circumstance that the trial court then considered in issuing its original sentence. Later, the court found that Jones had lied and resentenced him to a longer term. Jones now asserts that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prevented his resentencing after the fabrication was brought to the attention of the trial court. We conclude that where, as here, the defendant makes a fraudulent representation to the court, which the court accepts and relies upon in granting a sentence, the court may later declare the sentence void and double jeopardy does not bar a subsequently increased sentence. Therefore, we affirm the trial court's new sentence.

¶ 2. Jones was convicted of multiple drug offenses involving heroin and crack cocaine. At the time of sentencing, the court had a presentence investigation report that noted Jones had served in the military in Vietnam and had been a prisoner of war. The report indicated that Jones did not want the army contacted and did not want to dwell on his military record. His attorney spoke for him at sentencing and made the following representations about his military history:

> [I]t's extremely significant, both in understanding [Jones'] mental state and understanding the kind of person that he is, to realize that he served his country in Vietnam when many others refused to do that. He

spent 3 months and 18 days in a POW camp, suffered a wound to his head just prior to The Cong getting him and taking him to that camp. He's still got that wound right above his eye. It was worked on by the medics in the field, he was then taken to the POW camp, and the time that he spent in Vietnam and particularly in the camp is something that has stuck with him. I think that he does have some problems still relating back to that time.

I'm not a real believer in all of these syndromes that the psychologists come up with, but I can tell just from my discussions with Mr. Jones when he talks about his time in the Army and particularly his time in the POW camp that it's still a disturbing factor to him. He had his jaw broken by a guard in the camp. Once he escaped, he escaped with a number of his fellow prisoners, he had to have the jaw rebroken and reset because, of course, they didn't do anything for him while he was in the camp.

He told me about the meals that they had, which had been urinated on by the guards before it was given to them. The many nights they spent in fear of their own lives while they were in the camp. How they orchestrated their escape and the fact that they had all agreed in advance that if anybody fell during the escape they were to be left.

It's a time that is almost unimaginable to me. I'm approximately Mr. Jones' age, and I wasn't there and he was.

And I think that the court should not only give him credit for the time that he spent in jail here in Waukesha, but he deserves a lot of credit for the time that he spent in a prisoner of war camp while serving his country.

¶ 3. Jones' attorney then asked for probation with counseling while the State recommended ten years'

incarceration with three years' extended supervision on each count to run concurrently. Ultimately, the court imposed a sentence less than the State recommended based, in large part, upon counsel's discussion of Jones' Vietnam War experience, an issue we will discuss in detail later in the opinion.

¶ 4. Two weeks later, on April 18, 2001, the court called a hearing to inform the parties that it had received a fax from the "POW network" indicating that Jones had never been a prisoner of war in Vietnam as he had claimed at sentencing. The court then directly asked Jones whether he had been a prisoner of war in Vietnam. Jones replied, "No."

¶ 5. Based on Jones' admission, the court determined that a fraud had been perpetrated upon the court "[a]nd it's immaterial for purposes of sentencing whether the defendant himself said it or had his counsel give that information to the court." In addition, the court found that the fraud "was a very substantial factor in the court's sentencing, and the sentence would have been different absent that information." The court then allowed Jones' attorney to withdraw as counsel and set the matter for resentencing at a subsequent hearing.

¶ 6. At the resentencing hearing on April 30, 2001, the court relied on *United States v. Bishop*, 774 F.2d 771 (7th Cir. 1985), to justify imposing an increased sentence over Jones' double jeopardy objections. The court considered and again rejected the State's recommendation of ten years' incarceration, instead sentencing Jones to seven years' confinement with three years' supervision on the cocaine convictions, one year of confinement with one year of supervision for delivery of a noncontrolled substance represented as a controlled substance, and fifteen years of probation on the heroin conviction.

¶ 7. On appeal, Jones reasserts that the increased sentence violates his double jeopardy rights. He argues that the sole purpose of resentencing was to punish him, as there is nothing in the record to justify the length of time imposed "other than the court's indignation at having been taken in by the defendant."

¶ 8. Both the Wisconsin and United States Constitutions contain double jeopardy clauses and because they are coextensive, we will treat them as one in our discussion. *State v. Burt*, 2000 WI App 126, ¶ 7, 237 Wis. 2d 610, 614 N.W.2d 42, *review denied*, 2000 WI 121, 239 Wis. 2d 309, 619 N.W.2d 92 (Wis. Sept. 12, 2000) (No. 99–1209–CR). Whether Jones' double jeopardy protections have been violated is a question of law that we review de novo. *Id.*

¶ 9. The leading United States Supreme Court opinion on the double jeopardy limitations to increasing a sentence after its imposition is *United States v. DiFrancesco*, 449 U.S. 117 (1980). *DiFrancesco* sets out two principles that apply to the issue of whether a court may increase a sentence after service has begun. First, there no longer exists a per se rule that prohibits a court from increasing a defendant's sentence after service has begun. *United States v. Fogel*, 829 F.2d 77, 86 (D.C. Cir. 1987). Second, "[i]f a defendant has a legitimate expectation of finality [in the sentence], then an increase in that sentence is prohibited by the double jeopardy clause." *Id.* at 87. On the other hand, if a circumstance exists to undermine the legitimacy of that expectation, then a court may permissibly increase the sentence. *Id.*

¶ 10. In Wisconsin, we have recognized the principle that the application of the double jeopardy clause

to an increase in a sentence turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. *Compare Burt*, 2000 WI App 126 at ¶¶ 11–12 (where trial court erroneously pronounced sentence as concurrent rather than consecutive, the defendant had no legitimate expectation that the court would not correct its slip of the tongue on the day of sentencing) *with State v. Willett*, 2000 WI App 212, ¶ 6, 238 Wis. 2d 621, 618 N.W.2d 881, *review denied*, 2000 WI 121, 239 Wis. 2d 311, 619 N.W.2d 94 (Wis. Oct. 17, 2000) (No. 99–2671–CR) (defendant had legitimate expectation of finality in a sentence based on trial court's incorrect understanding of the law; double jeopardy protections prevented rectifying the mistake four months later with a stiffer penalty). We, therefore, adhere to the tenet that the analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence, which may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence. *See State v. Hardesty*, 915 P.2d 1080, 1085 (Wash. 1996).

¶ 11. The case before us, however, presents a double jeopardy issue of first impression in Wisconsin: can a defendant have a legitimate expectation of finality in a sentence that was induced by his or her purposeful misrepresentations? Common sense dictates that no reasonable person could hold a legitimate expectation of finality in a sentence procured by fraud and, indeed, the case law fully supports this common-sense conclusion.

¶ 12. In *United States v. Jones*, 722 F.2d 632, 638–39 (11ᵗʰ Cir. 1983), the Eleventh Circuit Court of Appeals adopted this approach in language often quoted by other jurisdictions:

For the purpose of determining the legitimacy of a defendant's expectations, we draw a distinction between one who intentionally deceives the sentencing authority or thwarts the sentencing process and one who is forthright in every respect. Whereas the former will have purposely created any error on the sentencer's part and thus can have no *legitimate* expectation regarding the sentence thereby procured, the latter, being blameless, may *legitimately* expect that the sentence, once imposed and commenced, will not later be enhanced. Under this analysis, unless the statute explicitly provides for sentence modification, as in *DiFrancesco*, or the defendant knowingly engages in deception, a sentence may not be altered in a manner prejudicial to the defendant after he has started serving the sentence.

*Accord, Bishop*, 774 F.2d at 776 n.8; *Hardesty*, 915 P.2d at 1085; *State v. Carvajal*, 709 P.2d 1366, 1369–70 (Ariz. Ct. App. 1985) (majority of cases holds the double jeopardy clause does not bar subsequent resentencing "where a defendant through fraud or collusion actively engineered an inadequate sentence").[1]

---

[1] In *United States v. Jones*, 722 F.2d 632, 634–35 (11th Cir. 1983), the district court had relied on erroneous information in sentencing the defendant to six months' imprisonment and imposing a $10,000 fine. Once the district court learned of its mistake, the court resentenced Jones to an increased term of incarceration. *Id.* at 635. The Eleventh Circuit reversed, stating that since Jones had begun to serve his sentence, his legitimate expectation in the finality of his sentence barred any resentencing by the court. *See id.* at 638. Significantly, Jones had not provided the erroneous information to the court and thus at the original sentencing he held a legitimate belief in the finality of his sentence. *Id.* By contrast, in *United States v. Bishop*, 774 F.2d 771, 776 (7th Cir. 1985), the defendant purposefully misrepresented the term of his sentence in Indiana in order to gain modification of his federal sentence. The court held that "[i]f a

¶ 13. We can conceive of no reason to apply a contrary rule. As the State points out, a criminal defendant who has perpetrated a fraud on the court cannot be permitted to reap its benefits. Such a result would strike at the very heart of our justice system which is based upon the honesty and truth of its participants. *Bishop*, 774 F.2d at 776.

■

¶ 14. The rule we adopt in Wisconsin, therefore, is that when a defendant makes a fraudulent representation to the sentencing court and the court accepts and relies upon that representation in determining the length of the sentence, the defendant has no reasonable expectation of finality in the sentence. The court may later declare the sentence void and double jeopardy will not bar subsequent resentencing to place the defendant in the position he or she would have been in if the fraud or corruption had been exposed at the time of the original sentence. *Id.* at 774.

---

defendant, such as Bishop, intentionally commits a fraud upon the court by providing the court with erroneous information that the court relies upon in determining the length of the sentence, he certainly must bear the consequences of his fraudulent and deceitful actions." *Id.*

In *State v. Hardesty*, 915 P.2d 1080, 1088–89 (Wash. 1996), the Supreme Court of Washington held that a defendant who fully serves a sentence procured by fraud may be resentenced without violation of the double jeopardy clause. In that case, however, the State failed to prove the fraudulent representation by clear and convincing evidence. *Id.* at 1089. In *State v. Carvajal*, 709 P.2d 1366, 1367 (Ariz. Ct. App. 1985), the defendant misrepresented to the court the availability of a motorcycle for restitution to the victims. The court determined that his probation could be revoked based on fraud without violation of double jeopardy protections. *Id.* at 1369–70.

172

¶ 15. Jones does not deny the legal authority establishing this rule; rather, he argues that the trial court did not rely on his attorney's misrepresentations regarding his prisoner of war status at the original sentencing hearing. He also asserts that the harsher sentence was imposed to punish him for the lie rather than for the conduct constituting the convictions.

■

¶ 16. The record before us belies both of Jones' assertions. At the April 18 hearing which the court held after discovering that Jones had lied about his prisoner of war status, the court determined that "[Jones' lie] was a very substantial factor in the court's sentencing, and the sentence would have been different absent that information." This conclusion is borne out by the trial court's opening remarks at the original sentencing:

> [I]n dealing with the character of the defendant, I'm struck by . . . the contrast between the two types of war that are brought to bear at this sentencing hearing. The first was the Vietnam war in which there was a Communist threat to this country. Ultimately this country won the cold war, and I believe in large part due to the sacrifices that our soldiers made in Vietnam. But we're engaged in another war in this country at this time and that's the drug war. And I'm sorry to see, sir, that you're a warrior on the wrong side of the drug war.

¶ 17. Later in its sentencing remarks, the trial court declined to impose the ten years' imprisonment requested by the prosecutor, even though it did not believe that the recommendation was "unreasonable," because it did not "think ten is necessary to send the message in this particular case, especially taking into account your character from the past." Read in the context of the trial court's earlier remarks about Jones' character, it seems plain that the court's reference to

173

"your character from the past" refers to Jones' service in Vietnam, including his stint as a prisoner of war. Moreover, Jones' counsel explicitly asked for sentencing credit based on the time Jones spent in a prisoner of war camp "serving his country."

¶ 18. We, therefore, agree with the trial court that Jones' false representation concerning his status in Vietnam was a substantial factor in the original sentence and, pursuant to the legal principles established above, the court had authority to remedy the erroneous sentence in a subsequent resentencing hearing.

██

¶ 19. We also see no evidence in the record that the increased sentence was based on the "court's indignation at having been taken in by the defendant" rather than on the gravity of the crimes themselves. At the April 30 resentencing hearing, the court emphasized the community's need for protection from street level drug dealers and then noted the risk Jones assumed "by the statements that were proferred to the court in terms of being a POW. That was a risk he was willing to take, it was done for the purpose of having an impact on this court, and it did have an impact on the court at the time of the sentencing." The court then sentenced Jones to three additional years' incarceration on the cocaine convictions. With respect to the conviction of delivery of heroin, the court found "there are additional probationary needs here based upon the fraud that was perpetrated on the court . . . and, therefore, this court feels that some additional time is necessary on a period of probation." The court then went on to withhold the imposition of sentence and placed Jones on fifteen years of probation on the heroin conviction. We discern no abuse of judicial power in this record transcript; indeed, notwithstanding the fraud upon the court, the court

still rejected the prosecutor's recommendation of ten years' incarceration as unnecessary.

¶ 20. Finally, we note that at the April 30 hearing, Jones was represented by new counsel, who suggested that Jones' fabrication about his prisoner of war status was concocted while he was in jail and was never intended for the court to rely on. Again, at a subsequent hearing on October 23, the attorney suggested that the fabrication was the result of Jones' "grandiose" type of personality rather than a purposeful attempt to deceive the court. We recognize that a defendant, through his or her attorney, may engage in some "puffery" in present-ing a zealous defense and such "puffery" does not raise the specter of fraud. But there is a difference between engaging in "puffery" and fraudulently representing a position that leads to a grant of privilege. *See Carvajal*, 709 P.2d at 1369. This case did not involve innocent bragging or exaggeration but the representation of specific false facts regarding Jones' prisoner of war status designed to evoke leniency from the court. Hav-ing successfully achieved the lenient sentence through fraud, Jones must now bear the consequences imposed by the court to remedy the erroneous sentence.[2]

---

[2] The State questions whether "new factor" analysis is applicable in this case where an enhanced sentence is imposed to correct a fraudulently procured sentence. There is authority in the case law for the proposition that a trial court may only increase a sentence based on new factors brought to the court's attention. *See, e.g., State v. Sepulveda*, 119 Wis. 2d 546, 559–61, 350 N.W.2d 96 (1984) (applying "new factor" analysis to affirm trial court decision to set aside probation and impose a three-year term of incarceration where defendant was denied admis-sion to mental health facility which was condition of probation); *Scott v. State*, 64 Wis. 2d 54, 59–60, 218 N.W.2d 350 (1974) (trial

*By the Court.*—Judgment and order affirmed.

court cannot increase a valid sentence based on mere reflection, but needs "new factor" not known at time of sentencing). While there may be circumstances where enhancing a sentence requires satisfying the "new factor" test set forth. in *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), we are convinced that such an analysis is not required in this case. *See Bishop*, 774 F.2d at 775 ("A court must be able to sentence a defendant upon accurate information and when the sentence imposed is based upon fraudulent information provided by the defendant, the court has the inherent power to correct that sentence.").