**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 15, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP2184-CR
2018AP2185-CR**

Cir. Ct. No. 2000CF358
2000CF367

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

THOMAS F. BALL, II,

    DEFENDANT-APPELLANT.

APPEALS from judgments and orders of the circuit court for Washington County: JAMES K. MUEHLBAUER, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. In these consolidated cases, Thomas F. Ball, II, appeals from judgments convicting him of nine crimes and from the orders denying his postconviction motions.[1] Ball contends defense counsel performed ineffectively at resentencing by failing to challenge the structure of his sentences and his sentence credit and failing to request a restitution hearing. He also contends a new factor merits sentence modification. His arguments are unpersuasive; we affirm.

## I. Background

### A. Case No. 00CF358

¶2    Ball, a heroin addict and convicted felon, robbed a bank while masked and wielding a stolen gun. He and his accomplice then led police on a thirty-eight-mile high-speed chase. An officer was injured in an attempt to apprehend Ball. Ball ultimately pled no contest to being party to a crime of armed robbery with threat of force ("bank robbery"), first-degree reckless endangerment, and endangering safety by reckless use of a firearm. The bank robbery carried a concealing-identity penalty enhancer; all counts carried a repeater enhancer.

### B. Case No. 00CF367

¶3    Two days later, Ball, in custody and suffering heroin withdrawal, was transported in ankle shackles to a hospital for medical treatment. There, he stabbed Washington County Detective Marie Joers with his IV needle and

---

[1] The Honorable Annette K. Ziegler presided over the proceedings through Ball's initial sentencing. The Honorable James K. Muehlbauer presided over Ball's resentencing and postconviction hearings.

demanded her service revolver. She refused to give it up, so he choked her to unconsciousness and seized it. When Joers came to, Ball pointed the gun at her and demanded her keys so he could remove his shackles. She refused.

¶4     Joers and a nurse tried to wrest the gun from Ball. Ball overpowered them, losing his hospital gown in the struggle. He again pointed the gun at Joers. When she still refused to give him her keys, Ball pulled the trigger twice but the gun did not fire. Ball chambered a round and shot off one of his shackles. Naked and bleeding, he fled on foot, firing more shots as he ran.

¶5     Ball then carjacked a Cadillac from a seventy-seven-year-old woman and led police on another high-speed chase through two counties, a portion of it through downtown Cedarburg, where an annual town festival was underway. Vehicles there were forced to take evasive action—he still struck one of them—and pedestrians had to dive out of the way. He eventually lost control of the car, which went airborne and crashed near a nursing home. Ball entered the facility, then fled into a field where, now clutching a blanket about himself, he was shot and apprehended.

¶6     Ball was charged with attempted first-degree intentional homicide in regard to Joers; disarming a peace officer; first-degree recklessly endangering safety by use of a dangerous weapon; battery of a peace officer; escape from criminal arrest; armed car-jacking; and felon in possession of a firearm. All of the charges carried a repeater enhancer.

## C. Disposition

¶7     In July 2001, a jury convicted Ball on all but the homicide charge. A month later, he entered no-contest pleas in case No. 00CF358. In October 2001,

the circuit court sentenced Ball in the two cases to forty years' initial confinement (IC) followed by forty-five years' extended supervision (ES).[2]  The court also ordered $24,998.32 in restitution.

### D.  Resentencing

¶8      In 2016, the Department of Corrections (DOC) asked the circuit court to review the ES portion of some of the sentences in both cases.  When a penalty enhancer increases the total length of a sentence, the maximum period of IC is increased by that amount.  WIS. STAT. § 973.01(2)(c)1. (2017-18).[3]  The DOC noted that here it appeared the enhanced time was applied either instead of or in addition to ES on some counts.

¶9      In April 2017, the court held a resentencing hearing.  It vacated all of the earlier sentences and reduced Ball's global sentence to thirty-eight years' IC and thirty-nine years' ES.  The State requested the $24,998.32 restitution as originally ordered.  Ball's attorney responded that he could not agree, as he "ha[d]n't seen any support for it."  The court said it would order the $24,998.32, but told Ball's attorney he could request a restitution hearing within thirty days.

¶10     The court then discussed Ball's credit for time served, which all agreed was 5409 days, nearly fifteen years.  The parties agreed that the court could allocate the days in the order in which sentencing occurred.  Saying Ball was "not

---

[2] Ball was sentenced on October 5, 2001, but did not begin serving that sentence until June 29, 2002, when he completed his revocation sentence.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

going to have to do the 15 years he already did," the court applied the credit to count one of case No. 00CF358, the bank robbery, for which Ball was resentenced to twenty years' IC and twenty years' ES.

### E. Postconviction

¶11 Ball moved for postconviction relief, arguing that defense counsel was ineffective at the resentencing hearing. He asserted that the sentence structure increased the term of some individual sentences he already had "completed," yet counsel failed: to argue that double jeopardy and finality-of-the-sentence principles made resentencing on those counts illegal; to argue that the 5409 days' sentence credit should have been credited against each of his eight concurrent sentences;[4] and to request a restitution hearing.

¶12 The court denied Ball's motion without a *Machner*[5] hearing, reasoning that, as each of Ball's original nine felony sentences included a term of extended supervision, he could not have "completed" any of them. The court also denied Ball's request for a restitution hearing because he had not asked for one when he had the opportunity to do so.

¶13 Ball appealed, then voluntarily dismissed it so as to file a supplemental postconviction motion. In it, he argued that postresentencing correspondence from the DOC constituted a "new factor" warranting sentence

---

[4] Of Ball's nine sentences, only the escape count in case No. 00CF367 was ordered to be served consecutively, which was mandatory at the time of his original sentencing. *See* WIS. STAT. § 946.42(4)(a) (1999-2000).

[5] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

modification. He claimed it showed that several of his sentences were legally "completed," such that the court was prohibited from resentencing him on them.

¶14   The postconviction court also denied that motion. It observed that Ball once more relied on the mistaken, and already-rejected, premise of his prior argument: that several of his original sentences had been "completed" by the time of his resentencing hearing. The court reiterated that Ball has not completed any sentence, as he has not yet begun to serve the ES portion of any of them. The court also noted that the DOC correspondence dealt with the resentence imposed and the sentence credit granted, matters the court found "hardly 'new,'" as it had taken them into account in structuring the resentence. The court also determined that "neither the resentence nor the sentence credit granted to Ball could possibly frustrate the purpose of the resentence. *They were the resentence*."[6] This appeal followed.

## II. Appeal

### A. Ineffective Assistance of Counsel

¶15   Under both the Wisconsin and United States Constitutions, for a court to find that counsel rendered ineffective assistance, a defendant must show both that counsel's performance was deficient and that, as a result of that deficient performance, the defendant was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d

---

[6] "In determining whether to exercise its discretion to modify a sentence on the basis of a new factor, the circuit court may, but is not required to, consider whether the new factor frustrates the purpose of the original sentence." *State v. Ninham*, 2011 WI 33, ¶89, 333 Wis. 2d 335, 797 N.W.2d 451.

305. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *Thiel*, 264 Wis. 2d 571, ¶19. Deficient performance is constitutionally prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, ¶20 (citation omitted). A claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*, ¶21. The circuit court's findings of fact will be upheld unless they are clearly erroneous, but whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law, which we review de novo. *Id.*

¶16 "A *Machner* hearing is a prerequisite for consideration of an ineffective assistance claim." *State v. Sholar*, 2018 WI 53, ¶50, 381 Wis. 2d 560, 912 N.W.2d 89. "A defendant is entitled to a *Machner* hearing only when his [or her] motion alleges sufficient facts, which if true, would entitle him [or her] to relief." *Sholar*, 381 Wis. 2d 560, ¶50. "If a defendant's motion asserting ineffective assistance 'does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.'" *Id.* (citation omitted).

### 1. Double Jeopardy/Finality of Sentence

¶17 Ball contends defense counsel should have objected to the sentencing structure. He reasons that, by the time of the April 2017 resentencing, he had completed several of his sentences and thus held a legitimate expectation of

7

finality in regard to all of his sentences, such that resentencing him on the "completed" sentences violated double jeopardy.

¶18    Because the double jeopardy clauses of the Wisconsin and United States Constitutions are coextensive, we may treat them as one in our analysis. ***State v. Burt***, 2000 WI App 126, ¶7, 237 Wis. 2d 610, 614 N.W.2d 42.  Whether a defendant's double jeopardy protections have been violated is a question of law we review de novo.  ***Id.***  "[T]he analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence …."  ***State v. Jones***, 2002 WI App 208, ¶10, 257 Wis. 2d 163, 650 N.W.2d 844.  That expectation may be influenced by many factors, such as completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence.  ***Id.***

¶19    The court focused on completion of the sentence and the passage of time, finding that neither worked in Ball's favor.    Under WIS. STAT. § 973.15(2m)(b),

> 1.  If a court provides that a determinate sentence is to run concurrent with another determinate sentence, the person sentenced shall serve the periods of confinement in prison under the sentences concurrently and the terms of extended supervision under the sentences concurrently.
>
> 2.  If a court provides that a determinate sentence is to run consecutive to another determinate sentence, the person sentenced shall serve the periods of confinement in prison under the sentences consecutively and the terms of extended supervision under the sentences consecutively and in the order in which the sentences have been pronounced.

A felony offender not serving a life sentence is entitled to release to extended supervision only after he or she has served the term of confinement in the prison portion of the sentence.  WIS. STAT. § 302.113(2).  Consecutive sentences imposed

for crimes committed on or after December 31, 1999, "shall be computed as one continuous sentence," and the person "shall serve any term of extended supervision *after* serving all terms of confinement in prison." Sec. 302.113(4) (emphasis added). Ball committed his crimes in 2000. Having other IC yet to serve, he had not begun any of his ES. Ball thus could not have "completed" any of his sentences by the time of his resentencing.

¶20 The court likewise concluded that the passage-of-time factor did not benefit Ball. When originally sentenced, his only possible expectation was that he would serve eighty-five years. The court found that, when viewed in full context, the fifteen years—less than eighteen percent of his total sentence—served at the time of his resentencing was not significant.

¶21 Citing *State v. Willett*, 2000 WI App 212, 238 Wis. 2d 621, 618 N.W.2d 881, Ball argues that his expectation of finality in his sentence was legitimate because the sentence undisputedly was illegal. *See id.*, ¶6. In *Willett*, the circuit court wanted to order the sentences for Willett's three convictions to run consecutively to the probation-revocation sentence he was to receive four days later, but believed that the law prohibited that structure and thus ordered them to be served concurrently. *Id.*, ¶¶1, 6. The court then discovered that its understanding of the law was mistaken and, four months later, ordered that the three sentences be served consecutively to the revocation sentence. *Id.*, ¶1. This court held that Willett had a legitimate expectation of finality in his original, lighter sentence because it was based on court error. *Id.*, ¶¶1, 6.

¶22 While he begins by noting the illegality of the original sentence, Ball seizes on the four months versus fifteen years. The entire picture is what makes Ball's case different from Willett's. Although, like Willett's, Ball's

original sentence was in error, Ball received a lesser one upon resentencing, while Willett's resentence was stiffer. ***Willett*** does not stand for the proposition that *any* error of law at the initial sentencing or *any* time period beyond a few months gives a defendant a legitimate expectation of finality.

¶23    For the above reasons, Ball's expectation of finality was not legitimate. Accordingly, there was no double-jeopardy violation.

2. Sentence Credit

¶24    All agreed Ball was entitled to 5409 days' sentence credit. Counsel's prejudicial error, Ball contends, was the failure to argue that, under ***State v. Lamar***, 2011 WI 50, 334 Wis. 2d 536, 799 N.W.2d 758, he is entitled to the credit on each of the eight concurrent sentences imposed at the original sentencing. Ball looks to ***Lamar***, which held that:

> [A]n offender is not entitled to additional sentence credit pursuant to WIS. STAT. § 973.04 when (1) the vacated sentence was originally imposed concurrent to a separate sentence, (2) the separate sentence is not vacated, (3) the vacated sentence is reimposed consecutively to the non-vacated sentence, and (4) the time that the defendant requested was served in satisfaction of the sentence that was not vacated.

*Id.*, ¶41.

¶25    Ball reads the ***Lamar*** holding to say that the *only* time a court can deny additional sentence credit is when all four factors are not met and points out that in his case there was no nonvacated sentence. Ball over-reads it. It neither says nor implies "only when." Indeed, the court expressly prefaced it with the caveat that the "unusual" facts of the case made its holding "narrow." ***Id.*** It would make no sense, and ***Lamar*** does not teach, that whenever a court

10

resentences a defendant on a multi-count case—which, perforce, vacates the original sentence—the defendant is entitled to sentence credit on the individual counts of the vacated sentences.

¶26    Alternatively, Ball points out that the resentencing court knew from the DOC correspondence that the original eighty-five-year sentence included an illegal twenty years. From there, he deduces that his resentence of seventy-seven years is illegal and argues that counsel ineffectively failed to argue that his new sentence could not exceed sixty-five years, the legal portion of his initial sentence.

¶27    The court decreased Ball's overall IC from forty to thirty-eight years and his overall ES from forty-five to thirty-nine years. Ball's counsel thus obtained for him a decreased overall sentence from eighty-five to seventy-seven years. And Ball does not—he could not—argue that any of the new individual sentences is illegal as above that crime's statutory maximum.

¶28    By citing *North Carolina v. Pearce*, 395 U.S. 711 (1969), Ball implies that his "increased" sentence was vindictive. The *Pearce* court required that, if the court later imposes a more severe sentence, "the reasons for [its] doing so must affirmatively appear." *Id.* at 726. But "[s]ubsequent case law has significantly narrowed the holding of *Pearce* to create a 'presumption of vindictiveness' only in situations where 'there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the sentencing authority.'" *Lamar*, 334 Wis. 2d 536, ¶46 n.13 (citing *Alabama v. Smith*, 490 U.S. 794, 799 (1989). The resentencing court's decision was painstaking and thorough. Beyond that, Ball did not receive an increased sentence, nor does he suggest what counsel might have argued to show vindictiveness.

11

### 3. Restitution

¶29 The resentencing court reordered the originally ordered $24,998.32, but told Ball's attorney he could request a restitution hearing within thirty days. Ball asserts that he objected to the amount from the outset because he "didn't wreck anything," yet, despite his insistence, defense counsel failed to request a hearing. A defendant who disputes restitution at a sentencing hearing may request a restitution hearing. *See* WIS. STAT. 973.20(13)(c). This ineffectiveness claim also falls short.

¶30 The record substantiates the ordered restitution sum. It includes insurance reimbursement for the car-jacked Cadillac, which the insurer deemed "totaled," repair bills for the vehicle Ball struck as he sped through Cedarburg, and that owner's deductible. The only point of dispute was that the car-jacking victim's insurer paid her $15,370, she bought a replacement vehicle for $9000, and both sums were included in the restitution total. Ball contends the victim attempted to "double-dip[]" by "fraudently" submitting the $9000 claim.[7] Accepting that he persisted in his request for an evidentiary restitution hearing, he does not explain how one would have made any difference.

¶31 In sum, Ball's motion asserting ineffective assistance did not sufficiently plead that counsel's performance was deficient or prejudicial in not arguing double jeopardy and finality of sentence or that sentence credit was misapplied. He also did not sufficiently plead that he was in any way prejudiced because he did not have a restitution hearing. Trial counsel cannot be ineffective

---

[7] Defense counsel and the State agreed to subtract the $9000, but Ball declined that offer claiming he wanted to dispute the entire amount.

for failing to raise meritless arguments. ***State v. Allen***, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. As he did not establish entitlement to a ***Machner*** hearing, his ineffective-assistance-of-counsel claims fail.

### B. Sentence Modification Based on New Factor

¶32 Ball claims a 2018 DOC letter and computation worksheet regarding sentence credit on the IC portion of his sentences is a "new factor." He argues that the correspondence indicates that he completed his sentences on two counts in case No. 00CF358 and three counts in case No. 00CF367, such that the court was prohibited from resentencing him on those counts and that those sentences should be dismissed.

¶33 Wisconsin circuit courts have inherent authority to modify criminal sentences upon the defendant's showing of a "new factor." ***State v. Harbor***, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." ***Rosado v. State***, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975).

¶34 The defendant must prove the existence of a new factor by clear and convincing evidence. ***Harbor***, 333 Wis. 2d 53, ¶36. "[I]f a court determines that the facts do not constitute a new factor as a matter of law, 'it need go no further in its analysis' to decide the defendant's motion." ***Id.***, ¶38 (citation omitted). But if a new factor is present, the court determines whether it justifies modifying the sentence. ***Id.*** Thus, to prevail, the defendant must demonstrate both the existence of a new factor and that it justifies sentence modification. ***Id.***

¶35     We agree with the postconviction court that Ball simply trots out the same already-presented completed-sentence argument the court had taken into account in structuring his resentence and that we have dispensed with as not viable.  As Ball has not begun to serve any ES—and he cannot until he serves all of his IC—none of those sentences, whether consecutive or concurrent, are complete.  The 2018 date of the DOC letter does not make it a new factor.

¶36     Ball has not proved by clear and convincing evidence that a new factor exists.  We therefore need not analyze whether sentence modification is justified.  *See **Harbor***, 333 Wis. 2d 53, ¶38.

        *By the Court.*—Judgments and orders affirmed.

        This opinion will not be published.  See WIS. STAT. RULE 809.23(1)(b)5.