STATE of Wisconsin, Plaintiff-Appellant,

v.

Bart C. GRUETZMACHER, Defendant-Respondent.

Supreme Court

*No. 02–3014–CR. Oral argument March 9, 2004.—Decided May 18, 2004.*

2004 WI 55

(Also reported in 679 N.W.2d 533.)

For the plaintiff-appellant the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief by *Jennelle London Joset* and *Obernberger & Joset, LLP,* Milwaukee, and oral argument by *Jennelle London Joset.*

¶ 1. N. PATRICK CROOKS, J. This appeal is before the court on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2001–02).[1] The State appeals an order of the circuit court, which resentenced Bart C. Gruetzmacher (Gruetzmacher) to 24 months imprisonment plus probation. In order to correct a sentencing error, the circuit court had previously resentenced Gruetzmacher to 40 months imprisonment. The State appealed the circuit court's final judgment and order, and the court of appeals certified the issue of whether a Wisconsin circuit court that

---

[1] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition. Wisconsin Stat. § (Rule) 809.61 states, in relevant part, as follows: "The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

makes a mistake in sentencing may correct obvious errors when the sentencing judge made a good faith mistake during sentencing, promptly recognized the error, and, although he increased a sentence on one count and reduced punishment on another count, achieved what the court originally intended.

¶ 2. We conclude that the circuit court acted appropriately in notifying the parties and holding another hearing two days later and resentencing Gruetzmacher two weeks later, in March, 2002, in order to correct a sentencing error. As is evidenced by the statements made during sentencing, the circuit court clearly intended to sentence Gruetzmacher to 40 months initial confinement. Gruetzmacher did not have an expectation of finality at his initial sentencing, because of the prompt actions of the court, so the sentence could be modified to correct the sentencing error. However, because the circuit court made an error of law in resentencing yet again in September, 2002, it erroneously exercised its discretion. We vacate the September resentencing order and reinstate the March sentencing structure.

¶ 3. We further decline the invitation of the State to overrule *State v. North*, 91 Wis. 2d 507, 283 N.W.2d 457 (Ct. App. 1979). Nevertheless, we withdraw the per se rule language in *North* that states that modification to correct sentencing errors is contrary to the double jeopardy provisions when the court seeks to increase a sentence already being served. We emphasize that the remainder of *North* remains intact, and is to be read with the factors set forth in *State v. Jones*, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844.

I

¶ 4.   The facts of this case relevant to this appeal are undisputed. On November 1, 2001, the State filed a criminal complaint in Waupaca County Circuit Court charging Gruetzmacher with seven crimes. The charges arose out of a domestic dispute Gruetzmacher had with the mother of his children and his ensuing altercation with a police officer. At the time this complaint was filed, Gruetzmacher also faced criminal charges in several other criminal cases within Waupaca County, so that he faced a total of 24 charges.

¶ 5.   The State and Gruetzmacher entered into a plea agreement, and Gruetzmacher's outstanding cases were disposed of in the following manner:   In case 01–CF-145, Gruetzmacher pleaded guilty to one count of substantial battery, a Class E felony. A second count of misdemeanor battery was dismissed, but reserved to be read in at sentencing. In case 01–CF-164, Gruetzmacher pleaded guilty to one count of possession of tetrahydrocannabinol (THC), a misdemeanor, as a repeater. Charges of possession of drug paraphernalia and felony bail jumping were dismissed, but reserved to be read in at sentencing. In case 01–CF-207, Gruetzmacher pleaded guilty to one count of victim intimidation, a Class D felony, as a repeater. One count was dismissed outright, and four other counts were dismissed, but reserved to be read in at sentencing. In case 01–CF-233, Gruetzmacher pleaded guilty to bail jumping, a Class D felony, as a repeater. Six remaining counts were dismissed in that case, but reserved to be read in at sentencing.

¶ 6.   Although no formal motion was filed by the State, Gruetzmacher's outstanding cases were, in effect, consolidated at the sentencing hearing on Febru-

ary 19, 2002. During sentencing, the State expressed concern regarding Gruetzmacher's potential for violence, particularly when abusing alcohol, and recommended 40 months initial confinement. Conversely, Gruetzmacher's counsel recommended that Gruetzmacher be sentenced to two years of initial confinement, varying terms of probation, the longest being 10 years, and community service.

¶ 7.  Ultimately, the circuit court sentenced Gruetzmacher as follows:  In case 01–CF-145, the circuit court sentenced Gruetzmacher to 40 months initial confinement and 20 months extended supervision for the felony substantial battery charge. In ordering this sentence, the circuit court noted that 40 months was the minimum period that he believed was necessary for Gruetzmacher. In case 01–CF-164, Gruetzmacher was placed on four years of probation for misdemeanor possession of THC as a repeater. In case 01–CF-207, the circuit court placed Gruetzmacher on probation for 12 years and withheld sentence for intimidation of a victim. In case 01–CF-233, Gruetzmacher was also placed on probation for 12 years and the sentence for felony bail jumping was withheld.

¶ 8.  Later the same day, the circuit court realized that substantial battery, the offense charged in 01–CF-145, was a Class E felony which carried a maximum initial confinement of 24 months. Thus, the 40–month term of initial confinement assigned by the circuit court exceeded the maximum amount that could be imposed for that offense. Realizing the error, the court then attempted to contact counsel and schedule another hearing. The parties could not reconvene until two days later.

¶ 9.  At the February 21, 2002 hearing, the circuit court stated that it was willing to vacate all of

Gruetzmacher's sentences and proceed with a new hearing. Alternatively, the circuit court suggested that it could change the probation period in case 01–CF-233 to a sentence of 40 months initial confinement to run concurrent with the 24–month maximum sentence allowable in case 01–CF-145. The State noted that the sentences should be either vacated or stayed so that Gruetzmacher did not enter the prison system. Having already foreseen this issue the court noted "I don't want him shipped. That's why I had the sheriff's department notified immediately not to ship him." The court ultimately entered a temporary stay with respect to all sentences in the case and set a new sentencing date.

¶ 10.    The court conducted a hearing to resentence Gruetzmacher on March 5, 2002. During the proceedings, the circuit court commented that it was very concerned by Gruetzmacher's violent conduct and had indicated such fact at the first sentencing. The court stated:   "I firmly believe that 40 months is the minimum period of confinement which is appropriate given Mr. Gruetzmacher's lengthy prior history and particularly given the violent conduct which was present on . . . three of these files . . . ."

¶ 11.    The circuit court resentenced Gruetzmacher as follows:   In case 01–CF-145, the circuit court sentenced Gruetzmacher to 24 months initial confinement, the maximum penalty allowable, and three years of extended supervision. In case 01–CF-164, Gruetzmacher was placed on three years of probation on a withheld sentence. In case 01–CF-207, the circuit court placed Gruetzmacher on 12 years of probation. In case 01–CF-233, Gruetzmacher was sentenced to a 40–month term of initial confinement and 20 months extended supervision, to run concurrently with the sentence in 01–CF-145. The circuit court again stated

that it believed that 40 months was an appropriate term of initial confinement based on Gruetzmacher's actions.

¶ 12. Gruetzmacher filed a motion to vacate the modified sentence on the bail jumping charge in case 01–CF-233. Relying on *North,* Gruetzmacher asserted that the court was barred, due to double jeopardy concerns, from correcting a sentencing error in one case by modifying a legitimately imposed sentence of probation in another case to one of confinement.

¶ 13. On September 16, 2002, the circuit court granted the motion and again resentenced Gruetzmacher. The circuit court stated that it was concerned about its authority to correct what it had perceived at the March resentencing to be a clerical error. It commented that, because the sentence it imposed for 01–CF-233 was valid, it was improper at the March resentencing to vacate the probation in that case. Thus, the circuit court decided to reimpose the period of probation in 01–CF-233. In effect, Gruetzmacher's actual term of confinement was shortened from 40 months to 24 months, as the only applicable sentence of confinement arose out of 01–CF-145. As a result of this modification, the court entered a new judgment of conviction and order of probation with respect to case 01–CF-233. The State appealed from this judgment and order pursuant to Wis. Stat. § 974.05(1)(a) and (c).[2]

---

[2] Wisconsin Stat. § 974.05 states, in relevant part, as follows:

[A]n appeal may be taken by the state from any:

(a) Final order or judgment adverse to the state, whether following a trial or a plea of guilty or no contest, if the appeal would not be prohibited by constitutional protections against double jeopardy.

## II

¶ 14. We now decide whether circuit courts should be allowed to correct obvious errors in sentencing where it is clear that a good faith mistake was made in an initial sentencing pronouncement, where the court promptly recognizes the error, and where the court, by reducing an erroneous original sentence on one count and increasing the original sentence on another, seeks to impose a lawfully structured sentence that achieves the overall disposition that the court originally intended.

¶ 15. Whether a defendant's double jeopardy rights have been violated is a question of law, which we review de novo. *State v. Davison,* 2003 WI 89, ¶ 15, 263 Wis. 2d 145, 666 N.W.2d 1. *See also State v. Trawitzki,* 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 628 N.W.2d 801 and *State v. Anderson,* 219 Wis. 2d 739, 580 N.W.2d 329 (1998).

¶ 16. The State contends that an increase in the sentence upon resentencing does not violate the double jeopardy clause when it is done to correct an invalid sentence and achieve a sentence originally contemplated by the sentencing court. The State asserts that this court should overrule the *North* decision because subsequent case law has undermined the double jeopardy analysis set forth in that opinion. The State notes that the decision in *United States v. DiFrancesco,* 449 U.S. 117 (1980) permitted a sentence increase after the defendant would have begun serving his already imposed sentence. The State contends that *DiFrancesco* stood for two principles. First, there is not a per se rule

(c) Judgment and sentence or order of probation not authorized by law.

593

barring sentence increases after a defendant had been sentenced. Second, whether a defendant had an expectation of finality is of primary concern to the double jeopardy analysis. In this case, the State contends, Gruetzmacher did not have an expectation of finality from his first sentencing in February through his final resentencing in September.

¶ 17. The State further contends that, by applying the principles found in *DiFrancesco,* the decisions of *Jones* and *State v. Burt,* 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42 further eroded the underpinnings of the *North* decision. Given the holding in *DiFrancesco,* the State asserts that the federal cases on which *North* relies are no longer good law. Thus, the State contends, this court should rely on the factors set forth in *Jones* to determine whether a defendant's double jeopardy rights have been violated.

¶ 18. Gruetzmacher asserts that the circuit court correctly reinstated probation in case 01–CF-233 at the September resentencing. Gruetzmacher contends that the circuit court did not have the authority to resentence him for a charge that he already had been properly and legally sentenced for, as it violated the double jeopardy clauses of the United States and Wisconsin Constitutions. Gruetzmacher points out that the circuit court specified its reasons for sentencing him in each particular case; thus, this was not a case of global sentencing. According to Gruetzmacher, simply because the sentence in one case needed to be modified did not give the circuit court the right to increase the sentence in another case. Gruetzmacher asserts that he had an expectation of finality when he was placed on probation in case 01–CF-233, and the subsequent resentencing to include a term of initial confinement violated his double jeopardy rights.

¶ 19.  Gruetzmacher further contends that the *North* decision instructs that increasing a defendant's sentence after he or she has been sentenced violates the double jeopardy clause. Gruetzmacher asserts that the *North* decision should not be overturned. Gruetzmacher contends that *North* is not a per se rule, stating that a judge may never alter a sentence without violating the double jeopardy clause, so that it needs to be overruled. Rather, Gruetzmacher asserts that the circumstances in this case are nearly identical to those presented in *North*. Gruetzmacher argues that his case involves four separate cases, instead of separate counts, which he claims actually strengthens his argument. Gruetzmacher states that none of the cases that the State relied on support overturning *North*. More specifically, Gruetzmacher notes that no deceit was present in this case as was present in *Jones*. Gruetzmacher further contends that the resentencing error in his case cannot be likened to a slip of the tongue situation, like that present in *Burt*.

██

¶ 20.  The Fifth Amendment to the United States Constitution states, in relevant part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The foundation for the double jeopardy provision in the United States Constitution has been described as follows:

> "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense . . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an

individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*DiFrancesco,* 449 U.S. at 127–28 (quoting *Green v. United States,* 355 U.S. 184, 187–88 (1957)).

¶ 21.  In *Benton v. Maryland,* 395 U.S. 784, 794 (1969), the United States Supreme Court concluded that the double jeopardy prohibition included in the Fifth Amendment "represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." The Wisconsin Constitution also contains a double jeopardy provision. Article I, § 8(1) states, in relevant part, "no person for the same offense may be put twice in jeopardy of punishment . . . ." Because the protection afforded by these provisions is coextensive, Wisconsin courts have traditionally treated them as one. *State v. Willett,* 2000 WI App 212, ¶ 4, 238 Wis. 2d 621, 618 N.W.2d 881, and *Burt,* 237 Wis. 2d 610, ¶ 7.

¶ 22.  Double jeopardy issues can arise in various situations, such as reprosecution after acquittal, mistrial, or conviction, and multiple punishments for the same offense. We have noted that there are various purposes of the double jeopardy clause, some of which include:

to protect the defendant from multiple trials and multiple punishments for the same offense; to preserve the finality of judgments; to protect the integrity of final judgments; to bar the government from a second chance to supply evidence which it failed to furnish in

the first proceeding; and to protect the defendant's right to have the trial completed by a particular tribunal.

*State v. Martin,* 121 Wis. 2d 670, 675, 360 N.W.2d 43 (1985).

¶ 23.    Clearly our jurisprudence has placed a premium on ensuring finality of judgments and not subjecting defendants to endless prosecutions or multiple punishments. Thus, we analyze the issue before us in this case with respect for the underpinnings of due process and double jeopardy and the purposes to be served in our justice system by adherence to these principles.

¶ 24.    In this case, the State urges us to overrule *North* and conclude that Gruetzmacher's probation could be modified to a 40–month term of initial confinement, while Gruetzmacher contends that *North*'s holding must lead to the conclusion that his final resentencing in September must be upheld. Because both of the parties' arguments hinge on *North,* and our interpretation and application of *North* will affect the outcome of this case, we feel it is necessary to discuss that case in some detail.

¶ 25.    In *North,* the defendant entered a plea of guilty to two offenses:    misdemeanor theft and uttering a forged check. *North,* 91 Wis. 2d at 508–09. The maximum sentence for misdemeanor theft was six months confinement in the county jail, or a $200 fine, or both. *Id.* at 509. The maximum sentence for uttering a forged check was ten years imprisonment or a $5000 fine, or both. *Id.* In what was an obvious sentencing error, the court sentenced the defendant to two and one-half years imprisonment on the theft charge and six months imprisonment, to run concurrently, on the

forgery charge. *Id.* The circuit court realized the error three and one-half months after sentencing and, on its own and without notice to the defendant, switched the sentences in keeping with the maximum penalty allowed for each charge. *Id.* The defendant moved to have the sentence for the forgery charge reduced to the original six-month sentence given by the circuit court. *Id.*

¶ 26.    The court of appeals reversed the sentencing order of the circuit court, and remanded with instructions that the defendant's motion should be granted. *Id.* at 511. The court of appeals stated that, in certain circumstances, a court could validly modify or correct a defendant's sentence even if he or she has already begun to serve the sentence. *Id.* at 509. Nevertheless, the court concluded that "(m)odification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served." *Id.* at 509–10 (citing *United States v. Benz,* 282 U.S. 304, 308 (1931)). The court of appeals explained that increased sentences should be disallowed for the following reasons:

> [T]here is a possibility of a judicial abuse which would arise if trial courts had discretionary power to increase sentences which convicted persons were serving; and, if trial courts are allowed to increase a valid sentence to offset an erroneously lenient one, a sentenced person's rights to challenge an illegal sentence would be materially chilled.

*Id.* at 510 (footnotes omitted).

¶ 27.    One year after the *North* decision was published, the United States Supreme Court issued its opinion in *DiFrancesco.* In *DiFrancesco,* the United States Supreme Court addressed the issue of whether

598

the increase of a sentence reviewed under a statute,[3] allowing the State to appeal a "dangerous special offender's" sentence, constituted multiple punishment that violated the double jeopardy clause. *DiFrancesco,* 449 U.S. at 138. The United States Supreme Court concluded that the statute allowing such an appeal was constitutional, and the cause was remanded.

¶ 28.    In its analysis, the Court noted that the Circuit Court of Appeals relied, as constitutionally based, on the dictum in *United States v. Benz,* 282 U.S. 304 (1931) stating that a sentence cannot be increased once the defendant has begun serving the sentence. *DiFrancesco,* 449 U.S. at 138. The Court noted that this statement was not essential to the holding in *Benz. Id.* Moreover, the court noted that the case cited by *Benz* as standing for that proposition, *Ex parte Lange,* 18 Wall. 163 (1874) did not state such a principle. *Id.* Thus, the United States Supreme Court confined the *Benz* holding to the specific context presented in *Lange.*[4] *Id.* at 139.

---

[3] The statute at issue in this case was 18 U.S.C. § 3576 of The Organized Crime Control Act of 1970. Section 3576 states, in relevant part, as follows:   "With respect to the imposition, correction, or reduction of a sentence after proceedings under section 3575 of this chapter, a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals."

[4] In *Ex parte Lange,* 18 Wall. 163 (1874), the defendant was sentenced to pay a fine for an offense where either imprisonment or a fine could be imposed. After the defendant paid the fine, the court resentenced the defendant to one-year imprisonment. Because the defendant had already paid the fine, thus enduring one of the two possible punishments prescribed for the offense, the court could not then sentence him to a term of imprisonment.

¶ 29.   The Court stated that the "Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *Id.* at 137. The Court further stated that double jeopardy does not demand that a defendant's sentence be given a level of finality such that its later increase would be prohibited. *Id.* The *DiFrancesco* court recognized that the level of finality accompanying an acquittal was qualitatively different than the level of finality that a defendant had after sentencing. *Id. See also Burt,* 237 Wis. 2d 610, ¶ 9. Noting the decision in *Bozza v. United States,* 330 U.S. 160, 166–67 (1947), which held that the district court could recall, in the same day, a defendant it only sentenced to imprisonment and add a fine, where the applicable statute carried a mandatory minimum of a fine and imprisonment, the Court stated that the " 'Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.' " *DiFrancesco,* 449 U.S. at 135 (quoting *Bozza,* 330 U.S. at 166–67). Moreover, the United States Supreme Court recognized that the defendant in *Bozza* was not twice put in jeopardy for the same offense. *Id.*

¶ 30.   The issuance of the United States Supreme Court's decision in *DiFrancesco* changed the landscape of double jeopardy law. Many cases, including the *North* decision, relied on the language in *Benz* that was subsequently withdrawn by the *DiFrancesco* court. After *DiFrancesco* dismissed the notion that there was a per se rule, the idea that modification to increase sentences already being served ran afoul of the double jeopardy clause was no longer sound. Moreover, courts

exercising criminal jurisdiction were encouraged to evaluate the defendant's expectation of finality in the sentence imposed.

¶ 31.   Several Wisconsin cases following the *Di-Francesco* decision hinged on the expectation of finality consideration set forth in that opinion. In *Burt,* the circuit court misspoke at the defendant's sentencing and sentenced him to concurrent sentences, rather than the consecutive sentences originally intended by the court. *Burt,* 237 Wis. 2d 610, ¶¶ 3,4. Because the circuit court took immediate steps to correct the misstated sentence the same day it was issued, the court of appeals held that the defendant's double jeopardy rights were not violated. *Id.,* ¶ 11. The court concluded that "a defendant's interest in the finality of his or her sentence is not a significant concern when the trial court simply corrects an error in speech in its pronouncement of the sentence later in the same day." *Id.,* ¶ 12. The court of appeals noted that the circuit court did not modify the sentence after reflection, but rather misspoke as to the intended sentence. *Id.,* ¶ 15.

¶ 32.   Conversely, in *Willett,* the court of appeals held that the defendant did have a legitimate expectation of finality when the court imposed its sentence and the defendant had begun to serve it. *Willett,* 238 Wis. 2d 621, ¶ 6. Simply because the court had expressed a desire to have the sentences run consecutively, as opposed to concurrently, when it originally sentenced the defendant, it did not follow that four months after the original sentence, the circuit court could then modify the concurrent sentences so that they would run consecutively. *Id.* The court noted that the defendant had heard the circuit court reject the state's suggestion that the sentences should run consecutively. *Id.* Moreover, the court of appeals noted that the alleged sen-

tencing error resulted due to the circuit court's incorrect understanding of the law, not because of a slip of the tongue. *Id.* The circuit court imposed a legally valid sentence, and the defendant had an expectation of finality in such sentence. *Id.*

¶ 33.   In *Jones,* the court of appeals discussed in some detail the effect that *DiFrancesco* had on double jeopardy law. The court of appeals in *Jones* recognized that *DiFrancesco* did two very important things with respect to sentence increases and double jeopardy concerns. First, *DiFrancesco* did away with the rule that a defendant's sentence could not be increased once the defendant had begun serving the sentence. *Jones,* 257 Wis. 2d 163, ¶ 9. The court in *Jones* also acknowledged that *DiFrancesco* focused on the defendant's expectation of finality in his or her sentence, as a factor to be considered as to whether a court could subsequently modify the sentence. *Id.* More specifically, if a defendant has a legitimate expectation of finality in his or her sentence, an increase in that sentence would violate the defendant's double jeopardy protections. *Id.* The *Jones* court further noted that Wisconsin courts have long recognized expectation of finality in a sentence as a key consideration in determining whether there has been a violation of double jeopardy. *Id.,* ¶ 10. The court of appeals in *Jones* stated the following:

> We, therefore, adhere to the tenet that the analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence, which may be influenced by many factors, such as the completion of the sentence, the passage of time, the pendency of an appeal, or the defendant's misconduct in obtaining sentence.

*Id.* (citation omitted).

¶ 34.   In *Jones,* the defendant's misconduct in obtaining sentence was the relevant factor to be considered. At sentencing, Jones told the court that he had been a prisoner of war in Vietnam, and the circuit court considered this factor when revising his sentence. *Id.,* ¶ 2. In fact, Jones had never been a prisoner of war. *Id.,* ¶ 4. The court of appeals concluded that, because the defendant had perpetrated a fraud upon the court at sentencing, he did not have a legitimate expectation of finality in his sentence. *Id.,* ¶ 14. The factors set forth in *Jones* belie the fact that there is no immutable rule prohibiting sentence increases once a defendant has begun to serve the sentence. Instead, the *Jones* factors must be evaluated in the light of the circumstances in each particular case.

¶ 35.   Given the United States Supreme Court's decision in *DiFrancesco,* and subsequent Wisconsin cases that relied on its holding, we conclude that the language in *North* stating that the due process clause acts as a bar to increasing sentences must be withdrawn. The *Jones* decision clearly recognizes that such a per se rule no longer exists in Wisconsin. *Id.,* ¶ 9. Thus, we conclude that the per se rule language in *North,* which states that "(m)odification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served," must be and it is withdrawn. *North,* 91 Wis. 2d at 509–10 (citing *Benz,* 282 U.S. at 308). Nevertheless, we leave the remainder of the *North* decision intact, to be read in light of the factors set forth in *Jones.*

██

¶ 36.   In the case at hand, we conclude that the circuit court clearly intended to sentence Gruetzmacher to 40 months initial confinement. This intent is

plainly demonstrated in the record of the February 19 sentencing. The circuit court made the following comments during sentencing:

> I am on 01–CF-145 going to sentence him to five years in the state prison system with 40 months of that being actual incarceration and the remaining 20 months being extended supervision. I believe that's the minimum period of incarceration that is necessary in a case such as that.

. . . .

> Take advantage of your period in prison. I hope the 40 months is long enough to get you into the intensive alcohol treatment programs in the prison system. My concern, quite frankly, is it may not be. That's why I, frankly, was thinking of a longer sentence. Take advantage of your opportunity to change your life around.

¶ 37.  The circuit court again noted its intention at the March resentencing for Gruetzmacher to serve 40 months imprisonment. The court stated:  "I firmly believe that 40 months is the minimum period of confinement which is appropriate given Mr. Gruetzmacher's lengthy prior history and particularly given the violent conduct that was present on . . . three of these files . . . ." The circuit court clearly expressed its feeling, both at sentencing and resentencing, that 40 months was the appropriate confinement for Gruetzmacher to serve.

¶ 38.  Moreover, the circuit court discovered the sentencing error the same day, and the parties would have reconvened that day if the circuit judge did not have assignments outside of the county. Instead, the court notified the parties and everyone was back in court two days later to address the matter. We also find it noteworthy that the circuit court purposely kept

604

Gruetzmacher in jail, and did not send him to prison, pending the resentencing reset for March. As previously noted, the circuit court stated "I don't want him shipped. That's why I had the sheriff's department notified immediately not to ship him." The circuit court clearly recognized that there had been a sentencing error that needed to be corrected, and it did not want the sheriff or the prison system acting on this erroneous sentence. The fact that the justice system as a whole had not yet begun to act upon the circuit court's sentence is an important fact that bears emphasis. Moreover, this was not a case where, upon mere reflection, the circuit court decided to increase Gruetzmacher's sentence. Gruetzmacher's sentence was not increased, and the circuit court merely corrected its mistake, so that Gruetzmacher could serve the intended 40–month sentence. Given the abovementioned considerations, we conclude that Gruetzmacher did not have a legitimate expectation of finality when sentenced in February, 2002.

¶ 39. Nevertheless, we conclude that Gruetzmacher did, in fact, have a legitimate expectation of finality in the sentence imposed during resentencing in March, 2002. After the March resentencing, Gruetzmacher was sent to prison, and the justice system as a whole was acting on the sentence handed down by the court. However, when the circuit court again resentenced Gruetzmacher six months later in September, 2002, it made an error of law and, therefore, erroneously exercised its discretion. *State v. Meeks,* 2003 WI 104, ¶ 19, 263 Wis. 2d 794, 666 N.W.2d 859; *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). At the September resentencing, the court incorrectly accepted Gruetzmacher's argument that the March sen-

tence had been imposed in violation of his double jeopardy rights. This was an incorrect conclusion, as the sentence imposed in March was valid for the reasons noted earlier. Thus, the court made a mistake of law when it applied the wrong legal test. Because the circuit court erroneously exercised its discretion when it imposed the September sentence, we reverse and vacate that judgment and order of the circuit court, and we reinstate the sentences imposed at the March resentencing.

## III

¶ 40. In summary, we conclude that the circuit court acted appropriately in resentencing Gruetzmacher in March, in order to correct a sentencing error made in February. As is evidenced by the statements made during sentencing, the circuit court clearly intended to sentence Gruetzmacher to 40 months initial confinement. Gruetzmacher did not have an expectation of finality in regard to his initial sentencing, and, therefore, the sentence could be modified to correct the sentencing error. However, because the circuit court made an error of law in resentencing yet again in September, 2002, it erroneously exercised its discretion. We reverse and vacate the September resentencing judgment and order and reinstate the March sentences.

¶ 41. We further decline the State's invitation to overrule *North*. Nevertheless, we withdraw the language in *North* that states that modification to correct sentencing errors is contrary to the double jeopardy provisions when the court seeks to increase a sentence already being served. We emphasize that the remainder of *North* remains intact and is to be read in accord with the factors set forth in *Jones*.

*By the Court.*—The September, 2002 judgment and order of the circuit court are reversed and vacated, and the sentencing structure imposed in March, 2002, is reinstated.

¶ 42.   DIANE S. SYKES, J., did not participate.