DAVID T. PROSSER, J.
¶ 52. {concurring). This is a close case that requires some "reflection" upon existing precedent. I join the majority opinion but write separately to provide support for the court's decision.
I
¶ 53. The dissent relies heavily on the reflection doctrine. To explain the doctrine, the dissent repeatedly cites Scott v. State, 64 Wis. 2d 54, 218 N.W.2d 350 (1974), which is the seminal case on the subject.
¶ 54. The Scott case deserves close attention, however, because it created a new rule that did not arise naturally from Wisconsin case law. Understanding Scott puts a circuit court's sentencing "mistakes" in a different light.
¶ 55. Calvin Scott was charged with armed robbery. Scott, 64 Wis. 2d at 56. He was convicted at a jury trial on May 17, 1973, and immediately sentenced to an indeterminate term of not more than five years, which *379 term was to be served consecutive to any previously imposed sentence. Id. On May 18 — the following day— the trial court, sua sponte, resentenced Scott, increasing his indeterminate term to not more than seven and one-half years, consecutive to any previously imposed sentence. Id.
¶ 56. At the initial sentencing, the court relied on the fact that Scott had no criminal record prior to the armed robbery, but the court knew that Scott had been convicted of injury by conduct regardless of life — after the robbery — for shooting and injuring his alleged accomplice. Id. at 57 & n.l. For that offense, Scott had already been sentenced to an indeterminate term of not more than five years. Id. at 57 n.l. Thus, the court's five-year sentence for the armed robbery produced a projected ten years in prison for Scott. Id. at 57.
¶ 57. At 8:20 a.m. on May 18, the court, sua sponte, ordered a further sentencing hearing for later in the day. Id. At 4:10 p.m. the hearing commenced and the court increased Scott's indeterminate sentence by two and one-half years, bringing his projected time in prison to 12 and one-half years instead of ten. See id. at 57-58.
¶ 58. The circuit court explained its position:
When I was driving home last night, it became clear to me that I had not accomplished the goal that I set out to do in the sentencing of this matter. ...
[In sentencing the defendant,] I tried to find some fairness in treating the two people involved in the situation the same.. . . You were already in jail for another matter for five years. The other gentleman received ten years for his offense. . ..
[M]y intent at the time was a sentence of seven and one-half years, because if I sentenced you to seven and *380 one-half years, I was doing two very important things, I thought, but I didn't communicate them to you.
I was giving you less than what Mr. Porter got for the same offense, and there were reasons for that, and those reasons were in your favor .... If I gave you just five years, you would be receiving a ten year sentence the same as Mr. Porter. But Mr. Porter was receiving ten years for one offense, and you were serving ten years for two offenses. That was not fair to the community.

So my notes indicated that you should be sentenced to seven and one-half years for this offense, for the March 6, 1969 robbery. And that was my intent yesterday and always has been.

Id. (emphasis added).
¶ 59. On appeal the Scott court reversed the circuit court with respect to the sentence. Id. at 61-62. It quoted State v. Foellmi, that "[a] trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." Scott, 64 Wis. 2d at 59 (quoting State v. Foellmi, 57 Wis. 2d 572, 582, 205 N.W.2d 144 (1973)). Then it added:
Logic dictates that if a court is precluded from reducing a sentence after some later reflection, it should also be precluded from increasing a sentence for the same reasons. It would create a double standard to not allow such a reduction and to permit the increase.
A review of the record in the instant case shows that the decision to increase the sentence was based solely on "reflection." Here the court amended the sentence so as to conform the sentence to its unspoken *381 intent. This in our opinion does not constitute a new factor upon which a trial court may increase a defendant's sentence.
Id. at 59-60.
¶ 60. There are several problems with the Scott opinion.
¶ 61. First, the court relied on three cases, State v. Leonard, 39 Wis. 2d 461, 159 N.W.2d 577 (1968); Denny v. State, 47 Wis. 2d 541, 178 N.W.2d 38 (1970); and Foellmi, as foundation for its legal conclusions. All three cases are problematic.
¶ 62. The Scott court quoted Leonard as follows:
Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence.
Scott, 64 Wis. 2d at 58 (quoting Leonard, 39 Wis. 2d at 473).
¶ 63. Leonard involved a fact situation related to sentencing after a second trial. Leonard, 39 Wis. 2d at 464-65. Had this court's ruling been confined to these facts, it would have been grounded in the sound principle that a defendant should not be punished solely for asserting his rights in a successful appeal. But the court extended the principle to "mere" resentencings because "we see no good reason" to distinguish some resentencings from others. Id. at 465. Thus, the court said, "the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of *382 sentence which warrant an increased penalty. . . Id. at 473 (emphasis added). This language is arguably ambiguous in its effect on a judicial "mistake" in sentencing. Is a judicial mistake in sentencing an "event"? If a mistake is an "event" and the mistake comes "to the sentencing court's attention subsequent to the first imposition of sentence," the court may increase the sentence. However, if a judicial mistake is not an "event," the formulation makes no provision for correcting a judicial error if the correction would increase a defendant's sentence.
¶ 64. The Scott court then quoted the Denny case as follows: "A trial judge is not free to re-evaluate the first sentence; he is in effect bound by the maximum of the previous sentence unless new factors or newly known factors justify a more severe sentence." Scott, 64 Wis. 2d at 59 (quoting Denny, 47 Wis. 2d at 544).
¶ 65. Because Denny also involved a sentence imposed after a second trial, the quoted statement was intended to apply in a different context from the situation in Scott.
¶ 66. The court then quoted the "reflection" sentence from Foellmi, 57 Wis. 2d at 582. Scott, 64 Wis. 2d at 59. Foellmi is a curious decision written by Justice Horace W Wilkie, who also wrote a concurring opinion. Foellmi, 57 Wis. 2d at 578, 586. The concurring opinion is at odds with the majority opinion. Compare id. at 579, with id. at 586-87 (Wilkie, J, concurring). Chief Justice Harold Hallows also concurred but disagreed with the majority's reasoning. Id. at 583 (Hallows, C.J., concurring). Justice Connor T. Hansen, by contrast, wrote a third concurring opinion, joined by two other justices, pointedly disagreeing with Justice Wilkie's concurrence. Id. at 587 (Hansen, J, concurring).
*383 ¶ 67. At issue in Foellmi was a sentence by a La Crosse County circuit judge who sentenced a defendant to prison after he pled guilty to 16 burglaries. Foellmi, 57 Wis. 2d at 574-75. The judge sentenced Foellmi to eight concurrent sentences of not more than five years on the first eight counts. Id. at 575. He then sentenced the defendant to eight concurrent sentences of not more than five years on the second eight counts, with the sentence for count nine to run consecutively to the sentence for count one. Id. Less than two months later, the court ordered that the defendant be returned to La Crosse from the Wisconsin State Reformatory — solely on the court's initiative — to be resentenced. Id.
¶ 68. The court explained that its undisclosed intention all along was to impose a "trial run" sentence in which the defendant would be ordered back to court within 90 days of the original sentence, after the defendant had heard "the prison gates clank behind him" and experienced the reality of prison life, e.g., the ultimate example of "Scared Straight." Id. at 576. Upon the defendant's return, the court reduced all 16 sentences from five years to three years and stated that counts two through eight would be concurrent with count one, counts ten through 16 would be concurrent with count nine, and count nine would run consecutively with count one. Id. at 577. The court then stayed execution of all sentences and placed the defendant on probation. Id.
¶ 69. Was this procedure proper? The divided Foellmi court affirmed the second sentence but adopted rules to prevent "trial run" sentences from happening in the future — at least without legislative authorization. Id. at 579-81. The court stated, "It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known." Id. at *384 582. The court quoted a passage from the Supreme Judicial Court of Massachusetts:
Occasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account. In such cases the interests of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time.
Id. (quoting Dist. Attorney for the N. Dist. v. Superior Court, 172 N.E.2d 245, 250 (Mass. 1961)). Then this court rebutted the Massachusetts court: "We think the Massachusetts court goes too far. A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention." Id.
¶ 70. No doubt Chief Justice Hallows was miffed by the first sentence because he had cited the Massachusetts decision with approval in a unanimous decision, Hayes v. State, 46 Wis. 2d 93, 102 n.2, 104, 175 N.W.2d 525 (1970), which declared that "a trial court may exercise its inherent power to change and modify its judgments after the execution of the sentence has commenced .. . Id. at 101. "We adopt one year from the date of sentencing for the time being as a time limit within which a motion can be made to have the court exercise its inherent power to modify a criminal sentence." Id. at 106.
¶ 71. The Foellmi decision was this court's full retreat from the Hayes decision, and Scott was the court's effort to treat sentence increases the same as sentence reductions. The court used Scott to make this *385 point, rather than to establish coherent policy, because this court certainly allowed circuit courts to correct "mistakes" when the correction benefited a defendant.
¶ 72. Examination of Scott and other early cases suggests that this court was reluctant to repudiate judicial authority to modify sentences, but it was apprehensive about permitting trial judges to modify their sentences whenever they had second thoughts about them. Judicial discretion of that nature would seriously undermine finality, creating uncertainty in the system as well as possible unfairness to defendants. As a practical matter, judicial authority to modify sentences had to be cabined. The new factor analysis set out in Rosado v. State, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), complemented the reflection doctrine described in Scott. These cases established parameters for discretionary sentence modification.
¶ 73. However, changing a sentence after rethinking or second-guessing it on the merits is different from correcting a sentence because of a judicial mistake. The new factor criteria are not suitable for evaluating judicial mistakes. This is one reason why the reflection doctrine does not control this case.
¶ 74. In addition, the Scott decision was influenced in part by concerns about double jeopardy. This is true, notwithstanding the fact that there was minimal discussion of double jeopardy in the opinion. See Scott, 64 Wis. 2d at 58. The Scott court stated: "Jeopardy in a constitutional sense has not attached and said sentence could be increased." Id. (citations omitted).
¶ 75. Chief Justice Hallows was still a member of the court when Scott was decided. In the Hayes case, Justice Hallows wrote:
[United States v. Benz, 282 U.S. 304 (1931)] pointed out the so-called lack of power to change a sentence after *386 the commencement thereof was not a question of jurisdiction or the power of the court but the result of the application of the theory that to change a sentence after commencement raised a question of double jeopardy. However, this question can only arise if the sentence is increased; there is no question of double jeopardy where the length of sentence is shortened.
Hayes, 46 Wis. 2d at 101.
¶ 76. Hayes was cited in State v. North, 91 Wis. 2d 507, 509-10, 283 N.W.2d 457 (Ct. App. 1979), where the court of appeals said:
Once a criminal defendant begins serving a sentence, a court may, in certain situations, properly modify or correct the sentence. Modification to correct sentencing flaws runs afoul of the double jeopardy provisions when the amending court seeks to increase sentences already being served.
[The Wisconsin Supreme Court] has stated that double jeopardy situations arise in modifying sentences when the sentence is enhanced or increased.
Id. (footnotes omitted) (citingHayes, 46 Wis. 2d at 101).
¶ 77. The majority opinion here emphasizes United States v. DiFrancesco, 449 U.S. 117 (1980), which was decided ten years after Hayes and one year after North. DiFrancesco "changed the landscape of double jeopardy law." State v. Gruetzmacher, 2004 WI 55, ¶ 30, 271 Wis. 2d 585, 679 N.W.2d 533. DiFrancesco said:
Historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal. . . . [Under English common law, the] trial court's increase of a sentence, so long as it took place during *387 the same term of court, was permitted. This practice was not thought to violate any double jeopardy principle. The common law is important in the present context, for our Double Jeopardy Clause was drafted with the common-law protections in mind.
The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence.
The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be.
DiFrancesco, 449 U.S. at 133-34, 136-37 (citations omitted).
¶ 78. DiFrancesco disavowed the "dictum" in Benz, 282 U.S. at 307, to the effect that the federal practice of barring an increase in sentence after service of the sentence began was constitutionally barred. DiFrancesco, 449 U.S. at 138. This disavowal removed the foundation for this court's comments in Hayes and the court of appeals decision in North. Indeed, Gruetzmacher withdrew language from North that would have greatly impeded the ability of circuit judges to correct mistakes. Gruetzmacher, 271 Wis. 2d 585, ¶ 35.
¶ 79. Gruetzmacher discussed several post-DiFrancesco cases from Wisconsin, State v. Jones, 2002 WI App 208, 257 Wis. 2d 163, 650 N.W.2d 844, State v. Willett, 2000 WI App 212, 238 Wis. 2d 621, 618 N.W.2d 881, and State v. Burt, 2000 WI App 126, 237 Wis. 2d 610, 614 N.W.2d 42, which, together, make the Scott case outmoded with respect to quickly-addressed judicial mistakes.
*388 ¶ 80. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." Bozza v. United States, 330 U.S. 160, 166-67 (1947). This aphorism was quoted in both DiFrancesco and Gruetzmacher and provides guidance in the review of judicial "mistakes." See DiFrancesco, 449 U.S. at 135; Gruetzmacher, 271 Wis. 2d 585, ¶ 29.
II
¶ 81. Human beings make mistakes. Even judges.
¶ 82. Sigmund Freud once lectured on "The Psychology of Errors" — "certain phenomena which are very frequent, very familiar and very little heeded, and which have nothing to do with the pathological, inasmuch as they can be observed in every normal person."[1] Freud said:
I refer to the errors which an individual commits — as for example, errors of speech in which he wishes to say something and uses the wrong word; or those which happen to him in writing, and which he may or may not notice; or the case of misreading, in which one reads in the print or writing something different from what is actually there. A similar phenomenon occurs in those cases of mishearing what is said to one, where there is no question of an organic disturbance of the auditory function. Another series of such occurrences is based on forgetfulness — but on a forgetfulness which is not permanent, but temporary, as for instance when one cannot think of a name which one knows and always recognizes; or when one forgets to carry out a project at the proper time but which one remembers again later, and therefore has only forgotten for a certain interval.
(Emphasis added.)
*389 ¶ 83. One need not buy into Freud's explanation of these phenomena to acknowledge that they exist. For instance, in this case, at the beginning of the sentencing hearing, there was discussion between the court and the defense attorney:
[THE COURT:] State and Mr. Rypel are making a joint recommendation of concurrent time to a sentence she's currently serving in Waukesha County. Is that correct?
MR. RYPEL: Yes.
THE COURT: Matter is here for sentencing. I trust I will be enlightened as to what she's serving in Washington and I will hear from the State.
(Emphasis added.) The reference to Washington County is a classic slip-of-the-tongue, to which no one responded. Did counsel mishear what the court said? Or did counsel disregard what the court said?
¶ 84. In my view, neither constitutional law nor sound public policy demands that a defendant benefit from an authentic judicial mistake in sentencing. The challenge for an appellate court in reviewing a sentence modification is identifying an authentic mistake that may be corrected from a change of position based on reflection that requires a new factor as a prerequisite to modification.
¶ 85. In North, the court sentenced a defendant for one count of misdemeanor theft and one count of uttering a forged check, which was a felony. North, 91 Wis. 2d at 508-09. The maximum penalty for misdemeanor theft was six months in the county jail, or a fine of $200, or both. Id. at 509. The maximum penalty for forgery-uttering was ten years in prison or a fine of $5,000, or both. Id. Inexplicably, the court sentenced North to two and one-half years in prison on the theft *390 charge, and six months concurrent on the forgery charge. Id. The court's sentencing objective — two and one-half years in prison — seems clear, but the prison sentence was assigned, mistakenly, to the wrong offense. Id. When the court attempted to correct the "obvious error" several months later, it was reversed. Id. at 511.
¶ 86. In my view, the circuit court's error in North was indeed "obvious" and the circuit court should have been permitted to correct it.
¶ 87. However, not all errors are so obvious.
¶ 88. In Burt, the circuit court sentenced a defendant on three serious felonies: (1) party to a crime of first-degree reckless homicide; (2) party to a crime of attempted armed robbery by the use of force; and (3) party to a crime of armed robbery by threat of force. Burt, 237 Wis. 2d 610, ¶ 1. In imposing sentence, the circuit court said:
As to count one [first-degree reckless homicide], Mr. Burt, you're sentenced to the Wisconsin state prison system for a period of forty years.
As to count three, you're sentenced to the Wisconsin state prison system for — Let me correct that.
As to count four [attempted armed robbery], you're sentenced to the Wisconsin state prison system for a concurrent term of twenty years.
As to count three [armed robbery], you're sentenced to a term of consecutive probation consecutive to both counts one and four for a term of seven years and a sentence of forty years is imposed and stayed.
Id., ¶ 3 (brackets in original).
¶ 89. Burt was sentenced on the morning of March 6, 1997. Id. Later, the court sentenced Burt's co-defendant, Anthony Sandifer. Id., ¶ 4. Sandifer's *391 attorney immediately objected to Sandifer's sentence, asserting that it was much longer than Burt's 40-year sentence. Id. The circuit court responded by calling Burt back to the courtroom for a corrected sentence. The court explained:
I'm going to place my original notes in a sealed envelope in the file for appellate purposes, but my notes are clear, and I did misspeak, and the court is fully aware — -very little time having passed in this matter — as to what its original intent was, and quite honestly, based on what the court thought it imposed —this sentence was somewhat less than the sentence that this defendant was to receive, the court believing that this defendant was a more aggressive actor in the matter, quite candidly.
So I understand whenever there is a change of this kind, it's bound to raise eyebrows and raise concerns, but the court intends to impose the sentence that it had in mind and meant to say at the time of the sentencing —

Id.

¶ 90. The court then repeated the sentence that it imposed on Burt in the morning, except that it changed the 20-year concurrent sentence for attempted armed robbery to a 20-year consecutive sentence for attempted armed robbery. Id.
¶ 91. The court of appeals upheld the 20-year increase in Burt's sentence, noting that "the trial court realized it made an error of speech in pronouncing Burt's sentence and took immediate steps to correct the sentence before the judgment of conviction was entered into the record." Id., ¶ 11. The court's "error" in executing its original intention was substantiated by its "original notes" and its sentence of Sandifer. Would the result have been different if Sandifer had been sen- *392 fenced the day after Burt was sentenced so that Burt's sentence could not be corrected the same day?
¶ 92. Misstatements involving consecutive sentences and concurrent sentences may not be uncommon. During the pendency of this case, the court received a petition for review in State v. Maxcey, No. 2012AP1988-CR, unpublished slip op. (Wis. Ct. App. July 30, 2013),[2] a sentencing dispute that included the following colloquy:
THE COURT: ... I think, Mr. Maxcey, that I do have to sentence you for four separate crimes and I am going to do that. I am, however, going to make your confinement concurrent to the confinement that you are now serving and you don't get any credit for it. Because you committed these armed robberies without a gun, I am going to sentence you to three years of confinement time on each of the armed robberies, so it should be a total of twelve years of confinement. That would be consecutive to the five years you are serving but that is a length of time that makes sense to me, given the nature of the crime—
[DEFENSE COUNSEL]: I thought you said it was going to be concurrent.
THE COURT: Did I say consecutive? Three years consecutive to — this is what I meant to say, I am sentencing [you] on one count with three read-ins; the bottom line number is twelve years because there are four crimes that I am considering here, but it will be concurrent to the sentence he is serving. Does that explain it?
[DEFENSE COUNSEL]: Yes.
Id. (emphasis added) (brackets in original).
*393 ¶ 93. In both Burt and Maxcey, a circuit court judge misspoke but an attorney alerted the judge to the error and the error was promptly corrected.
¶ 94. The difficulty in the present case is that it involves an error of "mishearing" rather than the more familiar error of misspeaking. In addition, the circuit court's position that it "misheard" information about the concurrent sentences in Waukesha County is contradicted by the fact that the court repeated what it heard. The circumstances of this case were such that no attorney alerted the court to the error because the court did not misspeak. The parties asked for concurrent sentences, the court imposed concurrent sentences, and the court intended to impose concurrent sentences. The court seemingly misunderstood the effect of the sentences it imposed because it thought it was imposing sentences concurrent to a 33-month sentence of confinement from Waukesha County.
¶ 95. That misunderstanding is inconsistent with the "two years in and four years out" statement found in the transcript. Thus, if this court were to adopt the position that judicial errors simply may not be corrected if correction produces an increased sentence, it could reverse the circuit court here based solely on its statements at the initial sentencing. Such inflexibility, however, would effectively dispute the authenticity of statements the court made about the defendant during the initial sentencing, statements the court made about its intentions during resentencing, and statements the court made in its written opinion denying a postconviction motion. It would not explain why the court went to CCAP to check out the Waukesha County sentences shortly after its own sentencing. It would place great importance on the fact that Robinson was sentenced in the afternoon, unlike Burt who was sentenced in the *394 morning, so that the court could not modify its sentence the same day. It also would place significance on the fact that no attorney spoke up and rescued the court from a mistake. However, it would place no significance on the fact that the court was dealing with a complicated set of facts, that it had no presentence investigation that put the Waukesha sentences in writing, and that it acted to correct its mistake within 24 hours.
¶ 96. The confusion related to the sentences is evident from the discussion during the plea hearing on April 12, 2011. The following exchange took place between the court and the Assistant District Attorney (ADA):
[ADA]: The State's recommendation is for count two, five months, House of Corrections, that would be concurrent with count three, consecutive to count one. Or count three, five months, House of Corrections, that is concurrent with count two and consecutive to count one. And for count one, six months in the House of Corrections with release to CJRC for treatment, consecutive to count two and three.
THE COURT: I'm sorry. Count one was what?
[ADA]: Count one was six months in the House of Corrections, with release to CJRC for treatment, and that would be consecutive to counts two and three.
THE COURT: So let me see if I get this straight. Count one, six months, House of Corrections, with release to CJRC, consecutive to any other sentence. Count two, five months in the House of Corrections, concurrent to any other sentence. Counts three, five months in the House of Corrections, concurrent to count two but consecutive to count one.
[ADA]: Yes.
*395 THE COURT: I'm confused.
[ADA] I think the bottom-line is that — -for the three counts in this case, [we're] asking for, essentially, 11 months in the House of Corrections—
THE COURT: Well, that doesn't make any sense. You want me to run all counts concurrent with the sentences in 08-CF-518 — 08-CM — So while on the one hand you're saying all counts concurrent, you're also saying counts one and counts three to be consecutive.
Why don't you guys take a moment and pass this case. Take a moment to set this out because this is getting extremely confusing. I don't know what you're asking me to sentence ....
¶ 97. Eventually, the ADA told the court that the sentence was to be concurrent with the Waukesha sentences, but she also said, "I'm willing to change the offer to a lengthy House sentence, concurrent to the sentence in the three cases, in which she was just revoked." It is true that the confusion related to the three counts from the Milwaukee County incident, but the plea hearing demonstrates that the judge was having a hard time wrapping his head around which sentences were concurrent and which ones were consecutive. It is understandable that the confusion would linger until the sentencing hearing less than a month later.
¶ 98. This is a close case, but I come down on the side of the judge. It does not take psychoanalysis to understand that the phenomenon of "mishearing" is different from not hearing. A misunderstanding, when acted upon very quickly, should not prevent a court from correcting a sentence. Such a correction does not violate double jeopardy and is a reasonable result in this case.
*396 ¶ 99. For the reasons stated, I respectfully concur.

 Sigmund Freud, A General Introduction to Psychoanalysis 10 (G. Stanley Hall trans., Boni & Liveright, Inc. 1920).

 This case is being cited solely for the facts and not as precedent or authority.